UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY ALAN DUNLAP,<br><br>      Plaintiff,<br><br> v.<br><br>I.M.S.I. (Warden) and DR.<br>CAMPBELL,<br><br>      Defendants. | Case No. 1:20-cv-00555-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Plaintiff Timothy Alan Dunlap is a death penalty inmate who resides in the custody of the Idaho Department of Correction ("IDOC") at the Idaho Maximum Security Institution ("IMSI"). Plaintiff asserts that he requested placement in the Acute Mental Health Unit ("AMHU") of the prison as a result of worsening of his mental health conditions, but prison officials have refused his request based on a state statute prohibiting death penalty inmates from being housed in that unit. (Dkt. 19.)

In particular, Idaho Code § 19-2705(11) provides:

> When a person has been sentenced to death, but the death warrant has been stayed, the warden is not required to hold such person in solitary confinement or to restrict access to him until the stay of the death warrant is lifted or a new death warrant is issued by the sentencing court; provided however, no condemned person shall be housed in less than maximum security confinement, and provided further that nothing in this section shall be construed to limit the warden's discretion to house such person under conditions more restrictive if

MEMORANDUM DECISION AND ORDER- 1

necessary to ensure public safety or the safe, secure and
orderly operation of the facility.

Defendants requested dismissal of Plaintiff's Amended Complaint for failure to
state a claim upon which relief can be granted. (Dkt. 40.) The Court reviewed the motion
and gave the parties notice that it would convert the motion to a motion for summary
judgment under Rule 56 so that it could consider Plaintiff's medical and mental health
records; the parties were ordered to submit supplemental briefing. (Dkt. 51.)

In particular, the Court notified the parties that it would liberally construe the
pleadings to assert that Plaintiff is not receiving adequate mental health care in his current
housing unit. After reviewing the additional information and records received, the Court
notified Plaintiff that, in his supplemental briefing, he must present:

- facts showing that Defendants have deliberately
  disregarded an excessive risk to his health and safety;

- facts showing which additional treatment that is
  necessary for his mental health conditions has been
  denied; and

- facts showing he has sustained or is at risk of
  sustaining an injury due to Defendants' conduct.

(Dkt. 51, p. 11.)

The supplemental briefing has been filed, and the motion is now ripe for
adjudication. (Dkts. 52, 53, 54.) All named parties have consented to the jurisdiction of a
United States Magistrate Judge to enter final orders in this case. (Dkt. 30.) *See* 28 U.S.C.
§ 636(c) and Fed. R. Civ. P. 73. Having fully reviewed the record, the Court enters the
following Order.

MEMORANDUM DECISION AND ORDER- 2

## STANDARD OF LAW FOR SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

The moving party is entitled to summary judgment if the party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb

MEMORANDUM DECISION AND ORDER- 3

through the record to find some reason to deny a motion for summary judgment."
*Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)
(internal quotation marks omitted). Instead, the "party opposing summary judgment must
direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa
Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address
another party's assertion of fact," the Court may consider that fact to be undisputed. Fed.
R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the
motion and supporting materials—including the facts considered undisputed—show that
the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving
for summary judgment does not bear the ultimate burden of proof at trial, that party may
prevail simply by "pointing out to the district court[] that there is an absence of evidence
to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The Court does not determine the credibility of affiants or weigh the evidence set
forth by the parties. Although all reasonable inferences which can be drawn from the
evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec.
Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences
from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment
rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir.
2018). In opposing a motion for summary judgment, a pro se inmate must submit at least

"some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

**CONSIDERATION OF DEFENDANTS' MOTION
AND SUPPLEMENTAL BRIEFING**

**1.      Background**

Plaintiff asserts an Eighth Amendment right to be placed in the Acute Mental Health Unit (AMHU) of the prison as a result of worsening mental health conditions. He most recently has been diagnosed with schizoaffective disorder, depressive type. (Dkts. 16-2, p. 7; 40-1, p. 5.) He contests Defendants' position that, because Plaintiff is a death-row inmate, Idaho Code § 19-2705(11) prevents Plaintiff from being housed in the AMHU.

While the Court notes the tension that would exist between mental health professionals who might recommend placement in the AMHU in a particular inmate's case and a statute that prohibits his placement there even if mental health professionals recommend it, other threshold issues in Plaintiff's particular case prevent the Court from reaching that issue. The threshold question is whether Plaintiff is receiving appropriate Eighth Amendment mental health treatment regardless of where he is housed. In other words, if Plaintiff requires "acute" mental health treatment of the type rendered in the

AMHU, the question is whether he can also obtain it in his current housing unit. It is not *where* Plaintiff is housed, but *whether his mental health treatment is appropriate*, that raises a viable constitutional issue in this particular case.

Plaintiff submitted his mental health treatment records for the prior six months. (Dkts 16-2 to 16-6.) The records show the following recent medical history:

> On or about October 11, 2020, Plaintiff purposely engaged in self-injurious behavior and verbalized suicidal ideation to take place "after chow." (Dkt. 16-2, p.14). While in a watch cell, Plaintiff told the clinician that things were coming out of the wall and attacking him, but the clinician noted he did not appear to be responding to such internal stimuli. Plaintiff said, "I was in the bug house in Indiana for this and now it's comin' on me again." *Id.*, p.14.
>
> On October 13, 2020, during a meeting with the clinician, Plaintiff requested either more intensive treatment or a change in medication to address increased symptoms. (Dkt. 16-3, p.1). Plaintiff asked if he was being considered for placement in the acute mental health unit. Plaintiff was told his classification may prevent such housing placement. Plaintiff reiterated he was looking for a change of placement for a few months. *Id.*, p.3. On October 14, 2020, the clinician noted Plaintiff "has a history of reporting atypical hallucinations in an attempt to manipulate his housing." *Id.*, p.6.
>
> On October 14, 2020, the clinician followed up with Plaintiff. At that time, Plaintiff explained that he had not been suicidal, but was feeling psychosis and afraid, so he made suicidal statements. *Id.*, p.19. Plaintiff said his hallucinations had stopped and he was no longer feeling scared. The clinician scheduled additional appointments for Plaintiff for follow up. *Id*. The clinician explained that occasional "breakthrough symptoms" are normal for patients with disease progression like Plaintiff. *Id.*, p.20.
>
> In a follow-up session the next day, October 15, 2020, Plaintiff reported he was suffering additional hallucinations,

MEMORANDUM DECISION AND ORDER- 6

but he could reason through them and recognize what was happening after approximately 15 minutes. *Id.*, p.23.

Also on October 15, 2020, Plaintiff appeared in the Mental Health Clinic for his 90-day psychiatric follow up. Plaintiff reported he was upset "people are not listening to me" and wanted his clinician to "make another presentation to Dr. Campbell about getting me in C-Block." *Id.*, p.8. The psychiatric nurse practitioner prescribed a "low dose atypical antipsychotic for a synergistic effect as pt. believes the change in medications will be helpful if he cannot be housed in C-Block [in the acute mental health unit]." *Id.*, p.6.

IDOC clinicians met with Plaintiff for follow-up sessions on January 6, 15, 22 and 27, 2021, as well as February 2, 2021. (Dkt. 16-4; 16-5). Nothing of note was reported during any of these sessions.

Plaintiff presented to the Mental Health Clinic on February 3, 2021, after refusing to attend his scheduled appointment on November 11, 2020. (Dkt. 16-4, p.5). Plaintiff reported to the psychiatric nurse practitioner, "The voices went away after you started that new pill [in October 2020]." *Id.* Plaintiff reported he is writing short stories and a book about aliens. *Id.*

Plaintiff met with IDOC clinicians for follow-up sessions on February 5, 9, 12, 19 and 23, 2021, as well as March 5 and 12, 2021. (Dkt. 16-5). During the February 5 session, Plaintiff reported he had not been experiencing hallucinations and the change in medication alleviated his symptoms. *Id.*, p.28. On February 9, Plaintiff stated he cannot move his body when he first wakes up in the morning. The clinician explained this condition is called sleep paralysis and is common for individuals in Plaintiff's situation. *Id.*, p.24. Plaintiff was assured that the condition is not permanent, and he asked that the nurse practitioner be advised. *Id.* During the March 5 session, Plaintiff reported hypnopompic visual hallucinations and sleep paralysis when he first wakes up. He recognizes the hallucination after fully waking up and the paralysis resolves. *Id.*, p.8. Throughout his February 2021 sessions, Plaintiff repeated his requests to be placed in the acute mental health unit. *Id.*

(Dkt. 34, pp. 6-8.)

Dr. Walter C. Campbell, Chief Psychologist for the Idaho Department of

Correction, states in his Affidavit:

> It is my opinion, based upon my qualifications and experience
> in the field of correctional psychology, that Mr. Dunlap has
> been seen with appropriate frequency by appropriate mental
> health personnel. It is also my professional opinion that the
> current course of treatment for Mr. Dunlap, which includes
> prescribed antipsychotic medication, psychiatric visits and
> clinician visits, reflect sound clinical judgment and remain a
> necessary and appropriate course of treatment for him in the
> correctional setting of a prison. I am not aware of any specific
> request for treatment that Mr. Dunlap has requested that he
> has not received aside from his request to join the Step Up
> group. His request for a housing assignment in the AMHU is
> not a request for treatment.

(Dkt. 31-4, ¶ 12.)

## 2.    Constitutional Right to Be Placed in the AMHU

If Plaintiff's claim is characterized merely as a "right to be placed in the AMHU,"

it is subject to dismissal for failure to state a federal claim upon which relief can be

granted. The contested statute has nothing to do with the determination that there is no

constitutional right to be placed in a particular mental health unit absent a mental health

provider's opinion that Plaintiff is unable to obtain appropriate mental health treatment in

his current housing unit. Prison housing assignments are functions wholly within the

discretion of the prison administration. *See Olim v. Wakinekona*, 461 U.S. 238, 245

(1983). There is no constitutional right to be housed in a unit of one's choice. *See*

*Meachum v. Fano*, 427 U.S. 215, 255 (1976), and *McCune v. Lile*, 536 U.S. 24, 38

(2002). The Supreme Court has cautioned the federal courts not to interfere with the day-

MEMORANDUM DECISION AND ORDER- 8

to-day operations of the prisons, which includes housing assignments, a task which is best left to prison officials who have particular experience in dealing with prisons and prisoners. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (First Amendment claims).

### 3.      Claim that the Statute is Unconstitutional

#### A.      *As-Applied Challenge*

Because Plaintiff's facts do not support a claim (1) that he is eligible for placement in the AMHU, (2) that he cannot obtain needed treatment for his mental health conditions in his current housing unit, and (3) that prison officials have used the statute to block his right to adequate treatment under the Eighth Amendment, he has no viable as-applied claim here. In other words, the statute is not being applied to him in an unconstitutional manner under the specific circumstances of his case.

#### B.      *Facial Challenge*

Petitioner also claims that Idaho Code § 19-2705(11) is facially unconstitutional. The United States Court of Appeals for the Ninth Circuit recently explained that, "[b[ecause a facial challenge is directed to the legislature, the plaintiff must show that "no set of circumstances exists under which the [statute] would be valid." *Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) (citing *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003)). When reviewing a facial challenge, the court's review of the statute is "limited to the text of the statute itself." *Id*. at 779 (citing *Calvary Chapel Bible Fellowship v. County of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020)).

MEMORANDUM DECISION AND ORDER- 9

Here, Plaintiff has not shown that there is no set of circumstances under which the

statute would be valid. The purpose of the 2003 change was articulated as follows:

> This bill will remove the statutory restrictions placed
> on the Department of Corrections regarding the imposition of
> solitary confinement and other conditions of confinement on
> death row. The current law requires the Department to hold
> death-sentenced prisoners in solitary confinement and places
> severe restrictions on who may visit such a prisoner and on
> the conditions of visitation. These restrictions apply even if a
> court has stayed the execution date and the statute has
> resulted in some prisoners being held in solitary confinement
> for more than a decade. Removing these statutory restrictions
> will give the Department the ability to better manage the
> behavior of death-sentenced inmates by giving it the
> discretion to grant and withdraw ordinary privileges afforded
> to other high-security inmates, while still requiring the
> Department to house such inmates in the highest security
> level.

Confinement under Death Sentences and Death Warrants, 2003 Idaho Laws Ch. 282

(H.B. 218). Clearly, one of the purposes of the statutory change was to benefit inmates

under the death penalty by allowing them to be housed under more humane conditions.

The Court concludes that, in almost every imaginable circumstance, except perhaps

where an inmate's needs could be taken care of only in a special medical or mental health

unit, the provisions of this statute are valid and, in fact, addressed potential Eighth

Amendment violations such as lengthy isolation.

Plaintiff asks the Court to "strike down the part of 19-2706[1] that deals with the

warden's ability to place a death-row inmate in general population." (Dkt. 54.) He argues

---

[1] Section 19-2706 was repealed and replaced by § 19-2705 in 2003.

MEMORANDUM DECISION AND ORDER- 10

that "the law now contains no safeguards for the mentally ill, [and] as such, it makes that portion of the law unfit to remain as a viable statute." (*Id.*) Allowing the warden the ability to place death-row inmates in general population is a viable and helpful provision of the statute; it does not meet the "under no circumstances" test for a facially unconstitutional statute. Plaintiff actually seems to be contesting the portion of the statute that gives the warden no discretion to place an inmate anywhere except in the highest security level of the prison system. That provision does not make the statute facially unconstitutional pursuant to the "under no circumstances" test. Rather, Plaintiff is persistently concerned about only one of many sets of circumstance—one that does not presently exist for Plaintiff. Therefore, the facial challenge to § 19-2705(11) is subject to summary judgment.

### 4.   Claim that Plaintiff is Not Receiving Adequate Mental Health Care in Current Housing

Based on the foregoing summary of Plaintiff's medical records and the opinion of the medical provider, Plaintiff has not shown that his current housing unit assignment violates his Eighth Amendment right to receive adequate medical and mental health treatment. Plaintiff has not presented evidence showing that Defendants have deliberately disregarded an excessive risk to his health and safety. He has not presented facts showing that treatment *necessary* for his mental health conditions has been denied. His insistence on being housed in the AMHU is not supported by any mental health provider's opinion. Neither has Plaintiff shown that he has sustained or is at risk of

sustaining an injury by the manner in which Defendants are treating his mental health conditions and housing him.

Plaintiff has alleged, but not shown, that he was provided with a written statement ensuring his placement in the ACMU after his resentencing. (Dkt. 52, p. 2.) Defendants were unable to find any such written statement in Plaintiff's medical, prison, or judicial records. (Dkt. 53, p. 3, n.2.) This Court has identified no such statement in the record. Therefore, Plaintiff has not created a genuine dispute of material fact with his assertion alone, without having produced the alleged written statement. And even if there was such a record, that would not be dispositive of the particular Eighth Amendment issue here. Plaintiff must come forward with medical records or other evidence showing that his mental health needs are not currently being met and can be met only in the AMHU. This, Plaintiff has not done.

Because Plaintiff fails to present anything that would create a genuine dispute about any material fact relevant to whether his mental health needs are being met in his current housing unit, the Court will grant summary judgment for Defendants and dismiss this case with prejudice.

# ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss, construed as a Rule 56 motion for summary judgment (Dkt. 40), is GRANTED.

2. Plaintiff's Motion for Admission of Exhibits (Dkt. 55) is GRANTED to the extent that the Court has reviewed the exhibits before determining the outcome of the summary judgment motion.

3. Plaintiff's case is dismissed in its entirety with prejudice.

DATED: March 21, 2022

Honorable Candy W. Dale
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER- 13